Betty & Lee **EVINGER**, Respondents,

v.

**McDANIEL TITLE COMPANY**, Appellant.

No. WD 38549.

Missouri Court of Appeals, Western District.

March 17, 1987.

---

Donald G. Stubbs, David K. Stubbs of Stubbs & Mann, P.C., Kansas City, for appellant.

Charles W. Gardner, Lee's Summit, for respondents.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

This is an appeal from a judgment in a jury-tried case in favor of respondents (plaintiffs) on their claim for damages. The judgment is affirmed in part and reversed and remanded in part.

Respondents' petition alleged that appellant (defendant) had been negligent in its preparation of a preliminary title report and in reliance on the false report that respondents purchased some real estate which was subject to an adverse claim. Subsequently, the adverse claimants successfully prosecuted an action against respondents which resulted in a reformation of respondents' title. *See Walkup v. Evinger,* 653 S.W.2d 383 (Mo.App.1983).

In the present action, respondents alleged that due to the negligence of appellant, respondents were damaged. The jury awarded respondents $44,500.00 in damages.

On appeal, appellant raises five points and charges, in summary, that the trial court erred (1) in overruling appellant's motions for directed verdict or, in the alternative, in refusing to instruct the jury as to certain factual issues because respondents are collaterally estopped to dispute said factual issues; (2) in submitting respondents' verdict-directing instruction because the evidence did not establish a duty owed to respondents or that appellant breached any such duty; (3) in refusing to submit appellant's instruction on contributory negligence because said issue had been tried with the implied consent of respondents; (4) in sustaining respondents' objection to appellant's use of the transcript in the *Walkup* case to refresh the recollection of a witness; and (5) in overruling appellant's motion for new trial because the verdict was not supported by substantial evidence.

As indicated *supra,* this action arises from the purchase of some real estate which was subject to an adverse claim. For detailed facts concerning the exact nature of the dispute, *see Walkup v. Evinger,* 653 S.W.2d 383 (Mo.App.1983). For the purpose of this appeal, it is sufficient to note that the dispute centered around the legal description of the property contained in a predecessor deed recorded in 1912.

Respondents entered into an agreement with Robert and Judith Parker for the purchase of the real estate. Prior to the closing on the property, respondents ordered a preliminary title report from appellant. The description given appellant was the legal description contained in the Parker deed. Appellant issued its report which stated that "[p]ursuant to application for title insurance, we find the fee simple title to said real estate ... vested in Robert S. Parker and Judith M. Parker, husband and wife." After receipt of the preliminary title report, respondents proceeded with the closing on the transaction.

After the closing, respondents received, from the Parkers, a letter from an attorney for the adverse claimants which indicated that, because of an alteration of the legal description which occurred around 1952, the Parker deed incorrectly reflected that the property contained 80 acres, when in reality, there were only 55 acres. Respondents notified appellant of the dispute and subsequently appellant informed respondents that the Parker deed was, in fact, incorrect and that the dispute could be settled with the execution of quit claim deeds. Respondents refused to execute the quit claim deeds and appellant thereafter refused to issue title insurance on the property and refunded the insurance premium to respondents.

As indicated *supra,* respondents were later sued by the adverse claimants and such suit resulted in the reformation of the incorrect deeds. Respondents then initiated the present action against appellant. Any other facts are set forth *infra* as the disposal of appellant's points warrants.

Under point (1), appellant argues that in the case of *Walkup, supra,* certain facts had been established and issues determined and that the trial court in the present action erred in refusing to hold that respondents were collaterally estopped to relitigate those same facts and issues.

The doctrine of collateral estoppel precludes the relitigation of issues determined by a former judgment when (a) the issue decided in the prior adjudication is identical to the issue presented in the present action; (b) the prior adjudication resulted in a judgment on the merits; and (c) the party against whom collateral estoppel is asserted was a party in the prior adjudication. *Oates v. Safeco Insurance Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979). *Consumers Oil Co. v. Spiking,* 717 S.W.2d 245, 249 (Mo.App.1986).

There is no question that the prior adjudication in *Walkup* was upon the merits of the case, or that the party against whom collateral estoppel is asserted (respondents) was a party in the prior adjudication.

■ Appellant further argues that this court determined in *Walkup* that (a) respondents (appellants in *Walkup*) were aware of the adverse claim to the property *prior* to the closing, and (b) the course of Sni-A-Bar Creek (which was involved in the dispute as to the boundaries of the property in question) had changed over the years.[1] Therefore, appellant argues, respondents should be collaterally estopped to relitigate those issues. Even if this court agreed with appellant that the court in *Walkup* determined those issues as appellant asserts, collateral estoppel would not apply because those issues (i.e., respondents' prior knowledge, and the course of Sni-A-Bar Creek) are not issues in the present action. The present suit involves the possible negligence of appellant in the

preparation of the preliminary title report. Any prior knowledge of respondents would only be pertinent if appellant had pleaded and submitted the issue of respondents' contributory negligence.[2] Respondents' prior knowledge of an adverse claim has no bearing on whether appellant owed a duty to respondents, whether that duty was breached, whether such breach was the proximate cause of respondents' injuries, and whether respondents were thereby damaged.

Likewise, the issue of the course of Sni-A-Bar Creek is not of any pertinence herein. The negligence alleged by respondents concerns appellant's failure to discover a discrepancy in the legal description which was contained in an earlier-recorded document. Granted, the discrepancy involved a reference to Sni-A-Bar Creek, but whether the creek actually changed its course over the years has nothing to do with the fact that there was a patent discrepancy between the Parker deed and an earlier-recorded deed or whether appellant's failure to discover the discrepancy amounts to negligence.

This court holds that the doctrine of collateral estoppel does not apply and the trial court did not err in refusing to instruct the jury as to the issues of respondents' prior knowledge and/or the course of Sni-A-Bar Creek. There is no merit to appellant's point (1) and it is ruled against appellant.

Under point (2), appellant argues that the trial court erred in submitting, over appellant's objection, Instruction No. 7, which states:

Your verdict must be for the plaintiffs if you believe:

First, defendant McDaniel Title Company issued to plaintiffs its Preliminary Title Report without first ascertaining that there was a potential adverse claim

---

**1.** Appellant's proffered instruction contains other "facts" which appellant argues respondents are collaterally estopped to relitigate. However, these additional "facts" also refer to the prior knowledge on the part of respondents of the adverse claim, and they will not be set forth in this memorandum.

**2.** The issue of whether appellant should have been allowed to submit an instruction on contributory negligence is raised in appellant's point (3). It is sufficient to note that at the times appellant raised the defense of collateral estoppel (i.e., appellant's answer, motion for summary judgment and motions for directed verdict) respondents' contributory negligence was not an issue.

to the property described in plaintiffs' deed as disclosed by recorded documents, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence plaintiffs suffered damage.

■ It is essential for a proper instruction that an issue in an instruction be supported by substantial evidence from which a jury can reasonably find such issue, and not be based on mere speculation or conjecture. *Blase v. Bi-State Development Agency*, 503 S.W.2d 463, 466 (Mo.App. 1973). Appellant asserts that there was no evidence presented that appellant could have discovered that there was a potential adverse claim by examination of recorded documents, there was no evidence presented at trial to establish the legal duty of appellant to conform to a certain standard of conduct, and there was no evidence presented that appellant breached any such duty. Appellant's assertions are directly refuted by the record. The record clearly indicates that the Parker deed contained a legal description of the property in question that varied from the legal description contained in a predecessor deed; that the deeds in question were recorded and available to appellant in the Office of the Recorder of Deeds in the Jackson County Courthouse in Independence, Missouri; and that, in the opinion of an employee of appellant, the discrepancy indicated "quite obvious[ly]" that the deeds post-dating the 1912 deed contained an inaccurate legal description of the property. From this evidence, a jury could reasonably find that appellant could have ascertained that there was a potential adverse claim by the examination of recorded documents.

■ Further, as to the legal duty appellant owed to respondents, the record indicates that respondents had ordered from appellant a preliminary title report; that appellant issued to respondents said report; that said report states, in effect, that appellant has examined everything of record pertaining to the title. The jury was instructed that the term "negligence" means "the failure to use that degree of care that

an ordinarily careful and prudent person would use under the same or similar circumstances." A duty to exercise care may be imposed by entering into a contractual relationship. *See Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976) and *Helton v. Hake*, 564 S.W.2d 313, 317 (Mo.App. 1978), *cert. denied*, 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352 (1978). From the evidence, a jury could reasonably find that appellant had a contractual duty to use due care in the examination of recorded documents in its preparation of the preliminary title report.

As evidence of a breach of the above-described duty, the record indicates that there were recorded documents to which appellant had access, which contained legal descriptions different than that contained in the Parker deed; that those documents could have indicated to appellant that there was a potential adverse claim to the property; that appellant did not discover those documents because they did not look for them; and that appellant issued a preliminary title report which was inaccurate. Furthermore, a witness for appellant, who, at the time of the issuance of the preliminary title report, was president of appellant title company, responded to the following question:

Q. [attorney for respondents]: You will admit there was an error in the title examination, wouldn't you?

A. Yes.

■ From the foregoing evidence, a jury could reasonably find that appellant failed to use due care in the preparation of the preliminary title report. Appellant's point (2) is ruled against it.

■ Under its point (3), appellant alleges that the trial court erred in refusing to submit an instruction on contributory negligence because, although the defense was not pleaded, it was tried with the implied consent of respondents. Specifically, appellant refers to evidence, which was admitted without objections, that respondents had notice of the adverse claim prior to closing on the real estate transaction and that respondents could have postponed or cancelled the closing but did nothing.

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Rule 55.33(b), and *see Twin Bridges Construction Co., Inc. v. Ferner,* 700 S.W.2d 534, 536 (Mo.App.1985). However, amendments to pleading to conform with the evidence are to be allowed only where the presentation of the merits will be subserved and where the objecting party will not be prejudiced in the presentation of his case, and it is within the sound discretion of the trial court to grant permission to amend the pleadings. *See East v. Landmark Central Bank & Trust Co.,* 585 S.W.2d 222, 225–26 (Mo.App.1979).

In the present case, appellant pleaded the defense of collateral estoppel and did not plead contributory negligence. The facts, which appellant argues support the submission of contributory negligence, were known to appellant long before the case was tried. (Indeed, these facts were known to appellant before respondents filed this lawsuit as appellant argues these facts were established in the *Walkup* case.) In its refusal to submit appellant's proffered instruction on contributory negligence, the court reasoned that the defense had never been pleaded even though the parties knew long before that contributory negligence was an issue, and that had appellant requested, the court would have allowed an amendment to the pleadings prior to the taking of evidence.[3] The court stated further that collateral estoppel had been pleaded and pursued by appellant through the entire proceedings but that the court would not allow an amendment after all the evidence had already come in.

■ Whether appellant's failure to plead contributory negligence or request an amendment before the evidence was concluded, was an oversight or a trial tactic, this court is left to wonder. It is obvious that the trial court was of the opinion that it would unfairly prejudice the respondents to allow appellant to amend the pleadings in the final stages of the proceedings.

**3.** It is noted that, as a matter of record, appellant did not move to amend the pleadings, there-

This court holds that the trial court did not abuse its discretion in refusing to submit an instruction on contributory negligence.

Appellant's point (4) requires direct consideration of matters revealed by the transcript. During the cross-examination of respondent Lee Evinger, appellant sought to utilize the transcript of the trial proceedings in *Walkup* for the purpose of refreshing the witness' recollection. Although the transcript had been admitted, the court refused to allow appellant to use the exhibit for the purpose of refreshing recollection. Appellant attempted an offer of proof as follows:

MR. STUBBS: [attorney for appellant]: I would like to cross-examine this witness with respect to what Mrs. Parker said in his presence at the prior trial, two instances.

THE COURT: Keep your voice down. I can hear you.

MR. STUBBS: "Mr. Helman said there was fifty-five acres." "Said what?" "Said there was fifty-five acres and that was the price that he wanted." "He wanted $800.00 an acre?" "Eight hundred dollars an acre."

Appellant's point (4) fails for several reasons:

■ First, in order to use a writing to refresh the recollection of a witness, that witness must exhibit both the lack of present memory and the need for the aid of the writing for recall. *State ex rel. Pini v. Moreland,* 686 S.W.2d 499, 502 (Mo.App. 1984). Although Evinger testified that he did not recall the testimony in question, he did not state that the transcript would refresh his recollection. Appellant argues in his brief:

A sufficient foundation was laid for the use of the transcript to refresh the witness' recollection when the witness Lee Evinger stated he did not recall the testimony at the earlier trial, since, during cross-examination, Evinger likely would not state that the writing would help

fore the court could not be said to have erred in refusing to amend the pleadings.

refresh his memory. Evinger was asked if the transcript would assist his recollection, but before he could answer, counsel for both parties approached the bench for a conference.

If appellant believed Evinger would not state that the transcript would refresh his memory, then obviously appellant cannot complain that he was prejudiced by the court's refusal to allow appellant to use the document for that purpose.

Furthermore, appellant misstates the record when he argues that Evinger was asked if the transcript would refresh his recollection. The portion of the testimony appellant refers to is as follows:

Q. You remember she testified she bought fifty-five acres from Mr. Helman?

A. I don't remember that.

Q. Let me read you (sic) from page 316 of the transcript of that trial and see if it refreshes your memory on it.

Appellant failed to lay the necessary foundation for the use of the transcript for the purpose of refreshing recollection.

■ Further, appellant's point fails because appellant was attempting to use a hearsay document (the transcript) which contained a hearsay statement (by Mrs. Parker) which repeated a hearsay statement (by Mr. Helman). Hearsay within hearsay (within hearsay) is only admissible where both (or all) the statement(s) and the original hearsay evidence are within exceptions to the hearsay rule. *Killian Construction Co. v. Tri-City Construction Co.*, 693 S.W.2d 819, 835 (Mo.App.1985). Appellant failed to establish that the three levels of hearsay were each within exceptions to the hearsay rule.

In addition, appellant's point fails for the reason that the statements appellant attempted to elicit from Mr. Evinger were totally irrelevant. Any statement made by a witness at a previous trial has no probative value on the issue of appellant's negligence. Furthermore, whether Mr. Evinger recalled the testimony of that witness cannot be argued to be probative of his contributory negligence (if such defense had been allowed) because the statement (of Mrs. Parker) was made after the injury occurred.

■ Finally, appellant's point (4) fails for the reason that refreshment of memory of a witness is a matter resting in the discretion of the trial court, whose rulings will not be disturbed in absence of abuse of discretion. *State v. Crow*, 486 S.W.2d 248, 257 (Mo.1972) and *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330, 335 (Mo.App.1983). Appellant has failed to show, and this court does not find, an abuse of discretion.

Under point (5), appellant argues that the trial court erred in overruling appellant's motions for directed verdict and for new trial because the verdict is not supported by substantial evidence. This court agrees with appellant.

Respondents' claim for damages may be summarized as follows: Respondents (believed they) purchased 80 acres for a total price of $55,000.00. Respondent Lee Evinger testified that if he were to farm 80 acres, the annual income would be sufficient to pay the amount he was obligated to pay each year on the debt. Respondents now own 55 acres which they purchased for a total price of $55,000.00. Lee Evinger testified that if he were to farm 55 acres, the annual income would not be sufficient to pay the amount he was obligated to pay each year on the debt. Lee Evinger also testified that, to him, the 25 acres in dispute in *Walkup* was worth $1,500.00 per acre, but that he did not know the fair market value of the land at the time he purchased the property or at the time of trial. Appellant presented no evidence as to the fair market value of the property.

The jury returned a verdict in favor of respondents and assessed damages at $44,-500.00. (In closing argument, respondents requested the jury award damages of $1,500.00 per acre or $37,500.00 total for 25 acres, plus other damages which, in addition to the $37,500.00, totals $44,500.00).

■ Proof of fair market value cannot be supplied by evidence as to the value of the property to the plaintiff individually, as

a witness' subjective opinion or his feeling or guess as to the value of property may not be equated with or substituted for fair market value. *P & S Leasing Co. v. Ray Smith Ford, Inc.*, 553 S.W.2d 733, 735 (Mo. App.1977). Thus, there was no substantive evidence on the fair market value of the property.

 Respondents' claim for damages is predicated on a permanent injury to real property. In essence, respondents claim that an 80–acre tract which would be profitable is rendered unprofitable by the reformation of the deeds entitling respondents to only a 55–acre tract. The appropriate measure of damages is the difference in fair market value of the property before and after injury or the cost of restoring the property, whichever is the lesser amount. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851, 858 (Mo.App.1978). Since the property cannot be restored, the measure of damages would be the difference between the fair market value of the 80–acre tract and the fair market value of the 55–acre tract. As stated, *supra*, there was no evidence of the fair market values of either tract.

Appellant argues that the measure of damages should be the fair market value of the property lost (i.e., the 25 acres), citing, *Thomas v. Boone Electric Co-operative*, 277 S.W.2d 640, 644 (Mo.App.1955). Therefore, if appellant paid $55,000.00 for 55 acres, the property's fair market value would be $1,000.00 per acre and the amount of damages $25,000.00. The rule cited by appellant, however, is only applicable to personal property.

It is a maxim of law that real property is unique. The fair market value of property cannot be calculated in increments. For example, if a tract of land containing 1,000 square feet has a fair market value of $100,000.00, it cannot be said that one square foot of that property has a fair market value of $100.00 because it is possible that there would be no market at all for one square foot of real estate.

Fair market value is defined as the price which property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so. *P & S Leasing Co., supra.* In the present case, there is no evidence as to fair market value. Respondents' opinion of value and/or the price they paid for the property is not evidence of fair market value.

The cause is hereby reversed as to the award of damages only, and remanded for trial on the issue of damages only.

All concur.