**James Ross COLVIN, Respondent,**

v.

**Katherine Sue ASHLEY, State of Missouri, Department of Social Services, Division of Child Support, Appellant.**

**No. WD 56100.**

Missouri Court of Appeals,
Western District.

June 30, 1999.

Steven M. Mitchell, Jefferson City, for appellant.

David D. Lodwick, Excelsior Springs, for respondent.

Before VICTOR C. HOWARD, P.J., ROBERT G. ULRICH, Judge and JAMES M. SMART, Jr., Judge.

ULRICH, Judge.

This is an appeal from a judgment of the Clay County Circuit Court reversing an administrative determination by the Department of Social Services, Division of Child Support. On appeal, the Division of Child Support argues that the Department of Social Services was correct in setting the level of child support at $535.00 per month because (1) the Administrative Hearing Officer's (AHO) determination was supported by substantial and competent evidence, made upon lawful procedure, and was not arbitrary, capricious, unreasonable, or an abuse of discretion; (2) the AHO was entitled to impute income to Ms. Colvin; (3) child care costs are a necessary component in the calculation of child support on Form 14; and (4) the

Department can compel a non-custodial parent to pay a portion of the costs associated with the custodial parent's acquisition of medical insurance. The Division of Child Support also contends that the circuit court erred in adopting the findings of the family court commissioner as its judgment because (1) Mr. Colvin failed to allege with specificity which constitutional provisions the Department's order violated; and (2) the court failed to provide the parties fifteen days in which to file a motion for rehearing before adopting the family court commissioner's findings and recommendations as the decree of the court.

The appeal is dismissed and the cause is remanded to the circuit court with instructions.

## FACTS

This is an appeal from a judgment of the Clay County Circuit Court reversing an administrative determination by the Department of Social Services, Division of Child Support. In July of 1989, James Colvin (Husband) filed a Petition of Dissolution of Marriage in the Clay County Circuit Court. Katherine Colvin (Wife) entered her appearance on July 27, 1989. Mr. Colvin and Ms. Colvin enter into a Property Settlement Agreement on November 6, 1989, which provided that Mr. Colvin would pay sixty dollars ($60.00) per week child support for the two children born of the marriage, Erin Colvin and Leslie Colvin. On November 14, 1989, the court issued a Decree of Divorce dissolving the Colvins' marriage that incorporated the child support agreement. The decree also directed Ms. Colvin to maintain medical insurance on Erin and Leslie and Mr. Colvin to pay any other costs associated with medical care for the children.

Ms. Colvin petitioned the Division of Child Support Enforcement (hereafter "the Division") for a review of the level of child support pursuant to section 454.400.2(13) [1] on May 28, 1997. The Division acknowledged Ms. Colvin's petition

and sent notice and financial questionnaires to both Mr. and Ms. Colvin. After reviewing the Colvins' responses to the questionnaires, the Division determined that application of the Rule 88.01 criteria and guidelines would result in a modification of the child support amount by twenty percent or more. The Division concluded, therefore, that under section 452.370, a prima facie showing of a change in circumstances requiring modification of the support amount had been established.

On July 9, 1997, the Division served Mr. Colvin notice of its motion to modify child support. Mr. Colvin filed a request for an administrative hearing pursuant to section 454.496.1 on August 6, 1997. On November 3, 1997, an administrative hearing on the Division's motion to modify child support was held.

Both the Division and Mr. Colvin filed a Form 14 worksheet. Mr. Colvin testified that his gross monthly income was $1,939.33 and that one child had been born of his second marriage. Ms. Colvin testified that she earned $19,852.00 in the last year that she worked, but that she voluntarily stopped working to take care of the children. She stated that if she were to return to work, she would require childcare for Erin and Leslie costing approximately $60.00 per week. Ms. Colvin also testified that she pays $354.60 per month for medical insurance for her family, which includes herself, Erin, Leslie, her new husband, and his two children. She stated that the insurance cost of $354.60 is a flat fee that applies if three to twelve people are on the plan.

The Administrative Hearing Officer (AHO) elected to complete his own Form 14 worksheet based on the testimony presented at the hearing. The AHO found that Mr. Colvin's gross monthly income was $1,939.33 but that he is entitled to a $364.00 credit for the child born of his second marriage; therefore, the AHO found Mr. Colvin's adjusted gross monthly

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

income to be $1,575.33. The AHO imputed income to Ms. Colvin in the amount of $1,654.33 based on her previous year's earnings because she voluntarily stopped working. Based on this evidence, the AHO determined that the combined gross monthly income of Mr. and Ms. Colvin is $3,229.66, which results in a preliminary child support obligation of $792.00. *See* Form 14, Schedule of Basic Child Support Obligation.

The AHO then added the preliminary child support obligation per month, $792.00, the predicted cost of child care per month, $187.20, and the cost of Ms. Colvin's medical insurance to cover Erin and Leslie, $118.00 per month,[2] to determine that the combined child support costs are $1,097.20. Mr. Colvin's percentage of the combined income was determined to be 48.78%, which calculated to $535.00 per month child support.

Pursuant to section 454.475.3, the AHO entered a "Judgment and Order" on December 1, 1997, increasing Mr. Colvin's child support obligation to $535.00 per month. The Order was filed with the Clay County Circuit Court on December 9, 1997. On December 10, 1997, the Family Law Commissioner, Michael Walker, disapproved the administrative modification. Mr. Colvin filed a petition for judicial review of the Order on December 24, 1997.

Commissioner Walker entered a "judgment" sustaining the petition for judicial review and reversing the Division on June 26, 1998, finding the Division's Order to be unconstitutional; in excess of the statutory authorization and jurisdiction of the Division; unsupported by competent and substantial evidence; arbitrary, capricious and unreasonable; and an abuse of discretion. The Clay County Circuit Court adopted the Commissioner's findings as a judgment of the court on the same day.

The Division filed a motion for rehearing with the Circuit Court on July 1, 1998. In its motion, the Division asked the court for specific findings of fact and conclusions of law. The court denied the Division's motion for rehearing on July 7, 1998, without making any findings of fact or conclusions of law. This appeal followed.

## POINTS ON APPEAL

The Division argues six points on appeal. Because Point VI is dispositive, points I through V are not addressed. In Point VI, the Division argues that the circuit court erred in adopting the findings of the family court commissioner as the judgment of the circuit court on the same day the family court commissioner issued his findings and recommendations because section 487.030.2 requires the circuit court to provide the parties fifteen days to move the court for rehearing before determining whether to adopt the findings of the commissioner. The Division cites section 487.030.2 and *In re Marriage of McMillin*, 908 S.W.2d 860, 862 (Mo.App. S.D.1995), for this proposition.

Section 487.030.2 provides that the parties to a cause of action that is heard by the family court commissioner are entitled to file a motion for rehearing with the court "either within fifteen days after receiving notice of the findings of the commissioner at the hearing, or within fifteen days after the mailing, or within fifteen days after other service directed by the court." § 487.030.2. The statute, however, does not explicitly require the court to wait fifteen days before deciding whether to adopt the commissioner's findings.

In *In re Marriage of McMillin*, the Southern District examined section 487.030.2 to determine whether the circuit court could enter an order adopting the findings of the family court commissioner without first having ruled on the party's timely motion for rehearing. 908 S.W.2d 860 (Mo.App. S.D.1995). The court found

---

**2.** The AHO divided $354.60 by six, the number of people covered, and then multiplied that number by two to determine the amount

that Ms. Colvin pays to obtain medical insurance for Erin and Leslie.

that under section 487.030.2, the family court did not have the authority to enter the order adopting the findings of the commissioner without ruling on the motion for rehearing because section 487.030.2 "obviously contemplates that the parties *must* be given an opportunity to request a hearing by the family court judge, and such a motion must be ruled by the judge before the findings and recommendations of the commissioner may be adopted and confirmed and thereby become the decree of the court." *Id.* at 862 (emphasis added).

The issue presented in the instant case is substantially similar to this issue in *McMillin.* Here, the circuit court adopted the findings of the family law commissioner on the same day the commissioner entered his findings and recommendations. The Division filed a motion for rehearing five days later, which was denied by the circuit court shortly thereafter. The Division, therefore, was not given a meaningful opportunity to request a hearing by the family court judge before the court adopted the findings and recommendations of the commissioner as its decree.

Section 487.030.2 clearly provides that the parties to a cause of action heard by a commissioner are "entitled" to file a motion for rehearing with the court within fifteen days of receiving notice of the findings of the commissioner. § 487.030.2. Failure by the circuit court to observe the fifteen day waiting period before determining whether to adopt the commissioner's findings nullifies this provision by depriving the parties of a meaningful opportunity to move the court for a rehearing.

The circuit court, therefore, erred by failing to provide the Division fifteen days to file a motion for rehearing before adopting the findings and recommendations of the commissioner because it failed to follow the provisions of section 487.030.2. The appeal is dismissed and the cause is remanded to the circuit court with instructions to set aside the court's judgment and to allow the parties 15 days from this court's mandate to move the trial court for rehearing, unless the parties waive in writing the filing of such motion before the conclusion of the 15 days, before it determines whether to adopt the findings of the family commissioner.

All concur.